Katherine McKELLAR, Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Respondent.

No. 09–841V.

United States Court of Federal Claims.

Nov. 4, 2011.[1]

Ronald C. Homer and Amy J. Fashano, Boston, MA, for plaintiff.

Debra A. Filteau Begley, United States Department of Justice, Civil Division, Washington, D.C., with whom were Tony West, Assistant Attorney General, Mark W. Rogers, Acting Director, Vincent J. Matankoski, Acting Deputy Director, and Catharine E. Reeves, Assistant Director for defendant.

OPINION

BRUGGINK, Judge.

This case is before the court on a motion by respondent for review of the special master's decision to award interim attorneys' fees. The underlying entitlement claim is still pending. The motion is fully briefed, and we heard oral argument on October 4, 2011. For the reasons explained below, we grant respondent's motion for review.

PROCEDURAL BACKGROUND

On December 7, 2009, Katherine McKellar, acting *pro se*, filed a petition seeking compensation under the National Vaccine Injury Compensation Program. *See* 42 U.S.C. §§ 300aa–1 to –34 (2006) (the "Act"). Petitioner claims to have suffered injuries resulting from Menactra, Varicella, Tetanus-diphteria-acellular-pertussis ("Tdap"), and Human Papillomavirus ("HPV") vaccines that were administered on March 7, 2007.

1. In accord with the Rules of the Court of Federal Claims, App. B, Rule 18(b), this opinion is initially being filed under seal. By rule, the parties are afforded 14 days in which to propose redactions.

On March 10, 2010, the special master granted a consent motion for attorney Ronald C. Homer to represent Ms. McKellar. After entering an appearance, Mr. Homer began to compile medical records. He collected approximately 400 pages of materials. On August 16, 2010, Mr. Homer filed an amended petition seeking compensation under the Act.[2]

Although the entitlement claim is still pending before the special master, on February 14, 2011, petitioner filed a motion seeking an award of interim attorneys' fees and costs. On March 25, 2011, petitioner filed a supplemental motion for attorneys' fees and costs. Because petitioner's counsel intends to withdraw from the proceeding pending before the special master,[3] he characterized both motions for attorneys' fees and costs as "final."

On June 3, 2011, the special master granted petitioner's application for attorneys' fees and costs in the amount of $18,255.53.[4] On July 5, 2011, respondent sought review of the special master's interim fee decision. The respondent asserts the following points of error: (1) interim fees are not appropriate under *Avera v. Secretary of Health & Human Services*, 515 F.3d 1343 (Fed.Cir.2008), (2) the special master abused her discretion in finding that the petition had reasonable basis, and (3) the special master abused her discretion in awarding fees.

## FACTUAL BACKGROUND

The petition asserts that on March 7, 2007, petitioner, who was born on December 13, 1990, received the Menactra, Varicella, Tdap, and HPV vaccines. On April 12, 2007, petitioner went to the emergency room complaining of blisters on her lip and tongue. Pet'r's Ex. 1 at 8.[5] The following day, she went to another clinic and presented with "fever [of] 101 [degrees], difficulty swallowing, pain 10/10 in mouth, throat [and] mouth swollen." Pet'r's Ex. 8 at 10. On April 14, 2007, petitioner was overcome by weakness and was found on her bathroom floor with a fever and blisters in her mouth. Pet'r's Ex. 3 at 18. Her mother took her to the hospital where petitioner presented with "severe multiple intraoral ulcers ... swelling of lips[, and] white nonscrapable patches on tongue." Pet'r's Ex. 3 at 17.

On July 20, 2007, a Vaccine Adverse Event Reporting System (VAERS) report[6] was filed "on Katherine's behalf." It noted that:

within a week[,] one of the injection sites swelled and became painful and red.... Within two weeks of injections, both lips swelled for one day. Within 4 weeks of injection, lips cracked and by the fifth week after injection the patient was hospitalized for severe stomatitis. The patient has never suffered these symptoms before, nor has she seeked [sic] care for the problem prior to this. The patient became dehydrated and needed IV care. The patient had blister type lesions that started on the outside of the lips and continued to spread to the back of the throat.

Pet'r's Ex. 5 at 1.

A medical record dated June 3, 2008, reflects that petitioner "[c]omplains of blisters for past 4 days. History of adverse reaction to vaccines one year ago and was hospitalized. Had severe lip swelling with throat

---

2. According to the respondent, and without contest by petitioner, on February 18, 2010, petitioner's counsel filed a petition for compensation under the Act. The respondent contacted petitioner's counsel and informed him that Ms. McKellar had already filed a *pro se* petition. Counsel's petition was then dismissed on March 24, 2010. *See* Resp't's Mem. Mot. for Rev. 4 & n. 4. These filings are not reflected on the court's electronic docket system, and are not relevant to our decision today.

3. *See* Pet'r's Reply to Resp't's Opp'n. 8 ("Petitioner's counsel intends to withdraw as counsel of record in this case.").

4. This represents the amount sought in the petition less an adjustment of $19.50, which the petitioner admitted was billed incorrectly. *McKellar v. Sec'y Health & Human Servs.*, 09–841V, 2011 WL 3425606, *3 n. 5 (Fed.Cl. Spec.Mstr. Jun. 3, 2011).

5. Petitioner submitted several exhibits to the special master, including medical records. "Pet'r's Ex." refers to these exhibits.

6. The record does not specify who filed the VAERS report. It merely noted that it was filed "on Katherine's behalf." *See* Resp't's Resp. to Resp't's Mot. for Rev. 13; *see also infra* at 303–04 discussing VAERS reports.

swelling." Pet'r's Ex. 8 at 91. A family practice physician noted in a medical record on October 7, 2009, that petitioner "had severe [reaction] to multiple injections." Pet'r's Ex. 5 at 2.

## DISCUSSION

In the proceeding below, respondent opposed the application on the grounds that the Vaccine Act does not authorize the award of attorneys' fees and costs prior to a resolution on the merits, i.e., either an award granting compensation or a denial of compensation. While it acknowledged that the Federal Circuit's decision in *Avera* permits an award of interim fees under some conditions, it nevertheless contended that the petitioner had not met those conditions. Respondent also argued that even if interim fees were permissible under *Avera*, petitioner did not meet the requirement under the Act that the petition have a reasonable basis.

The special master held that despite the lack of an entitlement decision, interim fees were permissible. The special master noted that "[u]nless interim fees are awarded to departing counsel, the purpose of the Act to encourage representation of vaccine-injured persons may be thwarted." *McKellar v. Sec'y Health & Human Servs.*, 09–841V, 2011 WL 3425606, *1 (Fed.Cl.Spec.Mstr. Jun. 3, 2011). Additionally, the special master found that the petition for compensation was brought with the statutorily-required good faith and reasonable basis. *Id.*

The Vaccine Act provides that we may reverse the decision of a special master only if that decision is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 42 U.S.C. § 300aa–12(e)(2)(B) (2006). Thus, the special master's finding of facts are reviewed under the "arbitrary and capricious" standard. *See de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1350 (Fed.Cir.2008). We review the special master's legal conclusions *de novo*, and use an abuse of discretion standard for discretionary rulings. *See Saunders ex rel. Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed.Cir.1994).

I. Interim fees before an entitlement decision are allowed under *Avera* and its progeny

Respondent asserts that it was reversible error for the special master to "award fees and costs prior to either an award of compensation or entry of judgment denying compensation under Section 15(e)(1) of the Act." Resp't's Mot. for Rev. 7. Respondent interprets the Act to require either (1) a judgment for compensation, triggering attorneys' fees under section 15(e), or (2) a denial of compensation, which would permit a discretionary award of attorneys' fees. According to respondent, because neither circumstance is present, petitioner's withdrawing counsel is not allowed fees and costs under the Act at this time.

Section 15(e) of the Act provides, in pertinent part:

(1) In awarding compensation on a petition filed under section 2111 [42 U.S.C. § 300aa–11] the special master or court shall also award as part of such compensation an amount to cover—

(A) reasonable attorneys' fees, and

(B) other costs,

incurred in any proceeding on such petition. If the judgment of the [United States Court of Federal Claims] on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

42 U.S.C. § 300aa–15(e)(1) (2006). The Federal Circuit twice has addressed whether the statute contemplates an award of interim fees, first in *Avera*, and then in *Shaw v. Secretary of Health & Human Services*, 609 F.3d 1372 (Fed.Cir.2010).

A. *Avera v. Secretary of Health & Human Services*

In *Avera*, petitioners filed a petition for vaccine injury compensation on behalf of their son. The special master concluded that

petitioners were not entitled to compensation. 515 F.3d at 1345. Petitioners did not seek review of the special master's decision. Two months after the special master's decision denying compensation, petitioners filed an application for an award of attorneys' fees under section 15(e)(1). The petitioners later amended their application to include a higher forum rate for attorneys' fees. The special master awarded fees at the original (lower) requested rates. *See id.* at 1346. After that decision, petitioners filed a motion to vacate the special master's decision, arguing that the higher forum rates should have been used, and for the first time, asserted a claim for interim fees pending appeal. The special master, and this court on review, denied the request for interim fees, concluding that the Act made no provision for "interim" fees. *See id.* at 1346–47.

On appeal, the Federal Circuit framed the issue as "whether [petitioners] are entitled to an award of interim fees pending appeal." *Id.* at 1350. The government argued that interim fees were inappropriate because section 300aa–15(f)(1) provides for "compensation," which, it argued, includes attorney's fees only when there has been an "elect[ion] to accept or reject" compensation under section 300aa–21(a). *Id.* This election, the government noted, could only be made after an entry of judgment. The Federal Circuit rejected this proposition under the reasoning of *Saunders ex rel. Saunders v. Secretary of Health & Human Services,* 25 F.3d 1031 (Fed.Cir.1994). In *Saunders,* the Federal Circuit held that the term "compensation" in section 300aa–15(f)(1) refers only to "payment for the compensatory damages referenced in 42 U.S.C. § 300aa–15(a) to (d), not to payment of attorneys' fees and costs." *Id.* at 1035. The court held, therefore, that "subsection 300aa–15(f)(1) did not limit the award of attorneys' fees only to situations where an election has been made.... There is nothing in the Vaccine Act that prohibits the award of interim fees." *Avera,* 515 F.3d at 1351.

The Federal Circuit also noted the numerous other fee-shifting statutes which have been construed to allow interim fees—including statutes that were silent in that respect.

Specifically, the court pointed to *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Bradley,* the Supreme Court construed section 718 of Title VII of the Emergency School Aid Act, which provided for prevailing-party attorneys' fees. Even though the statute was silent regarding interim fees, the Supreme Court nevertheless allowed them, reasoning that "[t]o delay a fee award until the entire litigation is concluded ... would work substantial hardship on plaintiffs and their counsel, and discourage the institution of actions despite the clear congressional intent to the contrary." *Id.* at 723, 94 S.Ct. 2006. In *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the Supreme Court construed 42 U.S.C. § 1988, which allows for "reasonable attorney's fee[s]," concluding that it allowed the award of interim fees. *Id.* at 757–58, 100 S.Ct. 1987. Relying on those decisions, the Federal Circuit reasoned that the "principle that similar language in separate fee-shifting statutes should generally be interpreted alike suggests that interim fee awards are permissible under the Vaccine Act." *Avera,* 515 F.3d at 1352.

The Federal Circuit also noted that "in vaccine cases[,] there is even more reason to award interim fees because there is no prevailing party requirement." *Id.* The purpose of the Act is to "ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Id.* To deny interim fees in all cases, thus would "clearly make it more difficult for claimants to secure competent counsel because delaying payments decreases the effective value of awards." *Id.*

The ruling in *Avera* nevertheless suggests that there is not a presumption of entitlement to interim fees. Rather, the court noted that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." *Id.* at 1352. Petitioners, however, had not demonstrated undue hardship, the fees were not substantial, no experts were employed, and there was only a short delay in the award pending appeal. The court affirmed the judgment that petitioners were

not entitled to interim fees. Therefore, we view *Avera* to mean that some special showing is necessary to warrant interim fees, including but not limited to the delineated factors of protracted proceedings, costly experts, or undue hardship. If mere good faith and reasonable basis were all that is necessary, the *Avera* factors become superfluous and interim fees would be the norm.

Respondent distinguishes *Avera* on the basis that there had been a decision on compensation in that case, whereas the same is not true here. Respondent wishes to mark the entitlement decision as the earliest point in time after which attorneys' fees can be awarded. Accordingly, respondent classifies petitioner's fee request here as a "fee award *pendente lite*," and under its reasoning, precluded under the Act and *Avera*.

### B. *Shaw v. Secretary of Health & Human Services*

*Shaw* implicitly answered the question not resolved in Avera, namely whether interim fees are permissible before an entitlement decision is made. In Shaw, petitioner sought compensation under the Act for an alleged injury resulting from a Hepatitis B vaccine. The petition was filed in 2001, but consideration was stayed until 2006 because of a pending omnibus proceeding involving numerous Hepatitis B cases. On March 12, 2008, the special master held an entitlement hearing and received testimony from three witnesses, including petitioner's expert. *Shaw*, 609 F.3d at 1373. After the entitlement hearing, but before the special master decided the matter, petitioner filed an application for interim fees and costs in the amount $32,311.45. *Id.* The government challenged a portion of the request as excessive and unreasonable. It did not, however, contend that interim fees were not permitted at that stage in the development of the case. The special master awarded the undisputed portion of the fees, and reserved judgment for the remaining portion "until a final petition for fees and costs is submitted." *Id.*

Petitioner then moved for reconsideration of the application. The special master denied that motion, explaining that she was preparing the entitlement decision, and her entitlement decision would consider the disputed fee portion. Petitioner then sought review of the special master's decision. We held that this court lacked jurisdiction to review a special master's interim fee award because it was not a "final decision" under the Act. *See Shaw v. Sec'y Health & Human Servs.*, 88 Fed.Cl. 463, 465 (2009). Petitioner appealed to the Federal Circuit.

The issue, as framed by the Federal Circuit, was "whether the Court of Federal Claims has jurisdiction to review an interim fee decision prior to the decision on the merits of the underlying claim." *Shaw*, 609 F.3d at 1376. The Federal Circuit held that it did: "The Special Master's grant or denial of interim attorneys' fees is a decision on compensation and as such it is reviewable by the Court of Federal Claims under § 300aa–12(e)." *Id.* Furthermore, the court noted, "[f]oreclosing review of a denial of interim fees is tantamount to a denial of such fees." *Id.*

The court further noted that a petitioner under the Act is entitled to attorneys' fees "as long as he or she brings the action in good faith and with a reasonable basis, regardless of the ultimate outcome of the case." *Id.* at 1377. A special master can also "often determine at an early stage of the proceedings whether a claim was brought in good faith and with a reasonable basis." *Id.* (quoting *Avera*, 515 F.3d at 1352). The court noted that, "[t]he special master may determine that she cannot assess the reasonableness of certain fee requests prior to considering the merits of the vaccine injury claim." *Id.* Under *Shaw*, therefore, it is clear that the Act permits interim fees even before an entitlement decision.[7]

### C. The scope of permissible attorneys' fees under *Avera*

■ *Avera* and *Shaw*, when construed together, provide that interim fees are allowed

---

7. Respondent's motion for review mentions *Shaw* in a footnote. It contends that *Shaw's* "procedural history did not provide respondent with a proper vehicle to challenge a broader interpretation of the availability of interim fees under *Avera*." Resp't's Mot. for Rev. 10 n. 7. It is not clear why that is the case. In any event, *Shaw* is binding.

under the Act, and more specifically, that interim fees are permitted even before an entitlement decision is made.[8] Thus, the question is whether interim fees are warranted in the circumstances of this case.

 The special master asserted that interim fees were appropriate because "unless interim fees are awarded to departing counsel, the purpose of the Act to encourage representation of vaccine-injured persons may be thwarted." *McKellar*, 2011 WL 3425606 at *1. Undoubtedly the purpose of fee-shifting under the Act is to "ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Avera*, 515 F.3d at 1352. This purpose is not thwarted, however, by disallowing a grant of interim fees in the absence of a special showing under *Avera*. Petitioners can always seek fees at the conclusion of the proceeding. More to the point, encouragement of representation is a reason that is always present, but under *Avera*, is by itself insufficient.

The special master cites to *Silver v. Secretary of Health & Human Services*, No. 99–462V, 2009 WL 2950503, *9–10 (Fed.Cl. Spec.Mstr. Aug. 24, 2009), for the proposition that not granting interim fees to withdrawing counsel could be problematic and thwart the purpose of the Act. It is not clear what concern the reference to *Silver* is meant to address. In *Silver*, the petitioner substituted counsel twice during the pendency of the entitlement decision. *Silver*, 2009 WL 2950503 at *3. Petitioner's two former attorneys intended to seek attorneys fees and costs. *Id.* The attorneys filed to intervene for the limited purpose of seeking fees and costs under the Rules of the United States Court of Federal Claims 24(a)(2). *Id.* at *4. Respondent argued that the former counsel could not intervene because of Vaccine Rule 15, which provides that "[n]o person may intervene in a vaccine injury compensation proceeding." The special master agreed, but noted that the former counsel were not strictly foreclosed from being granted fees

and costs under the Act. Rather, the proper mechanism for payment would be

> an award to the petitioner and current or former counsel that indicates and includes the amounts for former counsel's attorneys' fees and costs. Former counsel in this case may seek reimbursement of their fees and costs at an appropriate point in the progress of the case toward final resolution, when such fees and costs are sought by Petitioner.

*Id.* at *9. The special master in *Silver* thus expressly provided that attorneys' fees and costs can be awarded to former counsel. We agree. The special master could award attorneys' fees and costs to a withdrawn counsel at the conclusion of the entitlement proceeding. We hold, therefore, the mere fact that an attorney plans to withdraw is not necessarily a hardship that triggers an award of interim attorneys' fees and costs. Moreover, none of the other factors mentioned in *Avera* were implicated in this case.

The present facts, however, go beyond a routine withdrawal and substitution of counsel. The special master has stated that "Petitioner's medical records disclosed no evidence of a valid claim for compensation," and further noted the "weakness of the claim." *McKellar*, 2011 WL 3425606 at *2. The special master has effectively rejected the petition on the merits, making it unlikely that substitute counsel will appear and, for that reason, making it likely that, if the case is dismissed, there will be no occasion for petitioner to seek fees. Under the circumstances, we will treat the petition as if it were from a routine final award of fees.

## II. The special master's decision on attorneys' fees and costs

When a petition succeeds on the merits, the compensation award automatically includes an amount for reasonable attorneys' fees and other costs. 42 U.S.C. § 300aa–15(e)(1) (2006). When a petition loses on the merits, or when the request is for an interim award, the special master may make a dis-

---

**8.** Respondent's argument that pre-entitlement interim fees are not permissible has been uniformly rejected by this court's special masters. *See Crutchfield v. Sec'y Health & Human Servs.*, No.

09–39, 2011 WL 3806351, *5 (Fed.Cl.Spec.Mstr. Aug. 4, 2011) (citing decisions rejecting respondent's argument).

cretionary award of interim fees. *See id.* § 300aa–15(e)(2). To award fees, the special master must find that the petition had a reasonable basis and was brought in good faith. *See id.*

The presence of good faith here is not challenged. Rather, the respondent argues that the petition lacked a reasonable basis. Respondent asserts that a reasonable basis cannot be present when medical records are not filed along with the petition. The respondent also argues that the special master conflated the separate statutory elements of "good faith" and "reasonable basis" by extending the presumption of the former to the latter.

A. A reasonable basis can exist even if medical records are not filed simultaneously with the petition

Section 11 of the Act prescribes the required elements for a proper petition under the Act. Reduced to a minimum, a petition for compensation must contain three things: (1) an affidavit or other supporting documentation demonstrating that a person received a vaccine and suffered a resulting injury, (2) medical records regarding the vaccine and resulting injuries, and (3) if those records in (1) or (2) are not available, the reason for their unavailability. *See* 42 U.S.C. § 300aa–11(c) (2006). The respondent argues that petitioner's failure to collect medical records before filing a petition precludes awarding attorneys' fees. In response, petitioner asserts that (1) vaccine claims are rarely filed ab initio with complete medical records, (2) petitioners often file without any records to satisfy the three-year statute of limitations, and (3) the cost of providing full records at the outset is prohibitive and often requires a special master's subpoena to record holders.

█ Respondent's argument that the lack of medical records at the filing of a petition strikes a fatal blow to the petition's reasonable basis is unpersuasive. It is not uncommon in vaccine cases for petitions to lack complete medical records. *See Stewart v. Sec'y Health & Human Servs.,* No. 02–819, 2002 WL 31965743, *4 (Fed.Cl.Spec.Mstr. Dec. 30, 2002); *see also Hamrick v. Sec'y Health & Human Servs.,* No. 99–683, 2007

WL 4793152, *1 (Fed.Cl.Spec.Mstr. Nov. 19, 2007). In fact, "in a substantial number of cases ... petitions have been filed without *any* records at all." *Stewart,* 2002 WL 31965743 at *4. When adequate medical records do not accompany the filing, the special masters have merely delayed adjudicating the claims. *See id.* The presence of a reasonable basis is an objective consideration determined by the totality of the circumstances. *See Hamrick,* 2007 WL 4793152 at *4. Thus, while the initial absence of medical records is one factor a special master may consider in determining whether a claim had a reasonable basis, such absence is not dispositive. We thus consider the question of reasonable basis at the time the fee request was made.

B. The special master's determination of reasonable basis

To establish a reasonable basis, the petitioner must rely on more than speculation. *See Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1377 (Fed.Cir.1994). In *Perreira,* the Federal Circuit affirmed this court's denial of interim fees because the petition lacked a reasonable basis. Petitioner there asserted an injury allegedly caused by a diphtheria-tetanus-pertussis vaccine. The special master denied compensation. Petitioner then sought an award of attorneys' fees and costs, part of which was an amount for the expert witness. The special master only partially granted attorneys' fees because the expert's opinion "was found to be unsupported by either medical literature or studies, and therefore, of no value in establishing causation in-fact." *Id.* at 1376. Accordingly, once it was established that the expert opinion had no basis in fact or science, the petitioner had no reasonable basis to continue, and no fees could be awarded past that point. *See id.* at 1377.

On appeal, the Federal Circuit noted that Congress did not intend that every losing petition be automatically entitled to attorneys' fees. *See id.* The court held that an expert opinion grounded in neither medical literature nor studies could not support a reasonable basis for the petition. *Id.* Importantly, while the court did not require

counsel to verify the validity of the expert's opinion, it did require that the opinion be "more than unsupported speculation." *Id.* The import of *Perreira* is that, unlike good faith, there is no presumption of a petition's reasonable basis. The petitioner must affirmatively establish a reasonable basis to recover attorneys' fees and costs.

In the case at bar, the special master relied on references in the medical records to a vaccine injury. There were two. A medical record from a physician office visit dated June 3, 2008, stated that petitioner "[c]omplains of blisters for past 4 days. History of adverse reaction to vaccines one year ago and was hospitalized. Had severe lip swelling with throat swelling." Pet'r's Ex. 8 at 91. Another medical record from a physician's office visit in 2009 noted that petitioner "had severe [reaction] to multiple injections." Pet'r's Ex. 5 at 2. These quotes appear to reflect statements made by petitioner to her doctors, not the doctors' medical conclusions. Thus, as the special master noted, these quotes are potentially misleading insofar as "the medical records may have been incomplete and taken out of context." *McKellar,* 2011 WL 3425606 at *3.

In her opposition to the motion for review, petitioner points to three additional sources of support for the petition's reasonable basis. The first is the VAERS report. There is no indication who filed it, or whose opinion it represents. While VAERS data may be useful to scientific researchers, the purpose of a VAERS report is not to establish causal connection, or any connection for that matter, between a vaccine and subsequent maladies. *See* Centers for Disease Control, *Reports of Health Concerns Following HPV Vaccination,* Vaccine Safety (Nov. 1, 2011), http://www.cdc.gov/vaccinesafety/Vaccines/HPV/

gardasil.html. Furthermore, other judges and special masters of this court have been reluctant to rely on VAERS data.[9]

Petitioner next points to a report from the Centers for Disease Control, entitled "Reports of Health Concerns Following HPV Vaccination." This report notes that there have been VAERS reports filed after taking the HPV vaccine. The report cautions, however, that "VAERS data cannot be used to prove a causal connection between the vaccine and the adverse event. The only association between the adverse event and vaccination is temporal. . . ." *Id.* The report makes no mention of petitioner's major symptoms, namely stomatitis and other oral lesions. *See id.*

The final source, entitled "Analysis of Vaccine Adverse Events Reporting Systems Report: Part III," is a document prepared by the National Vaccine Information Center, a non-governmental vaccine awareness organization. This document compiles and analyzes information gathered from VAERS reports, noting the frequency and potential correlation between the HPV vaccine and subsequent maladies. *See* National Vaccine Information Center, *Analysis of Vaccine Adverse Events Reporting Systems Reports: Part III,* http://www.nvic.org/vaccines-and-diseases/HPV/ HPV_Vaccine_Safety_Rept-Part_III_081507_rev.aspx (last revised Aug. 15, 2007). This report is a compilation of VAERS reports, which we note above are not sufficient alone to establish reasonable basis. Although the special master does not cite these documents in her decision, they apparently were cited to her by petitioner.[10]

After discussing the presumption of good faith and, with no further transition, the spe-

---

**9.** *See Ryman v. Sec'y Health & Human Servs.,* 65 Fed.Cl. 35, 40 (2005) (affirming chief special master's decision that did not accord substantial weight to VAERS data because it can be filed by anyone, the quantity and quality of information it contains is limited and insufficient to make informed decisions, and may be biased towards pre-existing notions of adverse reactions); *Capizzano v. Sec'y Health & Human Servs.,* 63 Fed.Cl. 227, 231 (2004) (affirming chief special master's decision which noted that VAERS data has limited value because the manner in which it is collected, the lack of confirmation of the report-

ed information, and the lack of any systematic analysis), *vacated on other grounds,* 440 F.3d 1317 (Fed.Cir.2006); *Manville v. Sec'y Health & Human Servs.,* 63 Fed.Cl. 482, 494 (2004) (same).

**10.** Petitioner neither provided nor cited to this report in the amended petition for compensation under the Act. Rather, this report came to light once the interim fees were challenged. Respondent stated at oral argument, and petitioner did not contest, that petitioner's law firm is connected to this organization.

cial master stated that although the medical records were likely taken out of context, "more is required to justify refusal to award reasonable attorneys' fees." *McKellar,* 2011 WL 3425606 at *3. She concluded that "[u]nder all the circumstances, ... there was a reasonable basis to bring this claim. I therefore grant attorneys' fees notwithstanding the weakness of the claim, which is now evident." *Id.* at *5.

■ We read the special master's opinion as applying the presumption of good faith to the independent inquiry into whether there was a reasonable basis for the petition. We agree with the government that this was legal error because it effectively shifted the burden to the government to show that the petition did not have a reasonable basis. The burden is on the petitioner to affirmatively demonstrate a reasonable basis. While we are normally obliged to defer to the special master's discretionary findings that there was a reasonable basis behind the petition, see *Saxton v. Secretary of Health & Human Services,* 3 F.3d 1517, 1520 (Fed.Cir. 1993); *Murphy v. Secretary of Health & Human Services,* 30 Fed.Cl. 60, 61 (1993), we believe it appropriate, in light of the apparent conflation of the reasonable basis inquiry into the good faith test, to remand for a new determination in light of this opinion.

## CONCLUSION

For the reasons stated above, we grant respondent's motion for review. We reverse the decision of the special master, and remand for a renewed determination of petitioners' application for attorneys' fees and costs.